KIRBY *v.* MICHIGAN CENTRAL RAILROAD CO.

1. PROCESS—QUIETING TITLE—PARTY IN POSSESSION ENTITLED TO PERSONAL SERVICE.

> In proceedings to quiet title under 3 Comp. Laws 1915, § 12371 *et seq.*, one in actual possession of the land is entitled to personal service.[1]

2. JUDGMENT—PROCESS—SUBSTITUTED SERVICE—EJECTMENT.

> Where a railroad company in possession of a strip of land for more than 50 years, most of which time it was fenced in as part of its right of way, was not personally served in a suit to quiet title to said strip in another person, and it was not a party to said suit, it was not bound by the decree therein, and could attack it collaterally in ejectment.[2]

Error to Wayne; Jayne (Ira W.), J.    Submitted June 17, 1926.    (Docket No. 57.)    Decided October 4, 1926.

Ejectment by Joseph Kirby against the Michigan Central Railroad Company.    Judgment for plaintiff on a directed verdict.    Defendant brings error.    Reversed.

*John J. Danhof, Jr.* (*Frank E. Robson* and *John W. Langs,* of counsel), for appellant.

*Monaghan, Crowley, Reilley & Kellogg,* for appellee.

BIRD, C. J.    Plaintiff commenced suit in ejectment to recover possession of a strip of land 12 feet wide off the south end of lot No. 21, in the village of Dearborn.    The defendant pleaded the general issue and gave notice that it would show title by adverse possession.    At the conclusion of the trial, the trial court directed a verdict for the plaintiff.

---

[1]Process, 32 Cyc. p. 448; Quieting Title, 32 Cyc. p. 1346 (Anno).
[2]Id., 32 Cyc. p. 1384 (Anno).

It appears that this lot was owned by John Halpin in the year 1837, and in September of 1838 he conveyed it to the State of Michigan, then engaged in constructing the Central Railroad. Afterward, in 1846, when the State conveyed the railroad to the present Michigan Central, the sale included this lot. The railroad did not have the deed recorded in the county of Wayne, but the State had its deed recorded at the secretary of State's office at Lansing, where the act, authorizing the construction, provided. It took possession of the lot, and since the Michigan Central has owned it, it has had it fenced by either a board or wire fence most of the time. It further appears that another record title grew out of the settlement of the estate of John Halpin, although he made no disposition of the lot in his will. In 1902 William Halpin and wife deeded to Anthony Wagner lot No. 21, and bounded it on the south by the Michigan Central Railroad. In 1914 the lot was assigned by the probate court to Kate Dingeman, a daughter of Anthony Wagner. In 1915 Kate Dingeman conveyed the same by warranty deed to Fred A. Beatcher. In 1917 Beatcher conveyed the lot to Joseph H. Kirby, the present plaintiff. In 1918 Kate Dingeman, who had warranted the title when she sold it, filed a bill to quiet the title under 3 Comp. Laws 1915, § 12371 *et seq.* The defendant was not made a party to this proceeding and a decree was awarded to her, quieting the title. When defendant made its defense in this case it attempted to show its record title, and also its title by adverse possession, and it was met with the objection that it was immaterial. After some discussion, in which the defendant stated to the trial court that it had not been made a party to the Dingeman suit, the objection was sustained and the court held that the defendant was included among the unknown assigns and was estopped by the decree.

It perhaps is well to state that the Michigan Central offered to show by a witness that it had had continuous and uninterrupted possession of the premises for 50 years, and during the most of that time it had been fenced by either a board fence or a wire fence. The trial court's view that the defendant's rights were concluded by the Dingeman decree makes it necessary to examine the statute which authorizes such actions, 3 Comp. Laws 1915, § 12371 *et seq.* We think that the purpose of this statute makes it obligatory upon one who is desirous of quieting his title to real estate to use due diligence and make a reasonable effort to discover all the persons that claim to have any interest in the premises. When he has done so, and found all the persons by name that can be ascertained with reasonable diligence, he is then permitted to include the unknown heirs and assigns under that name and get service upon them by substituted service. This is indicated by section 12375:

"Whenever defendants are named in any suit or proceeding as the unknown heirs, devisees, legatees and assigns of any person, or are included in any class of unnamed persons, the bill of complaint or petition shall be sworn to by the moving party, his agent or attorney, and shall state that the affiant does not know, and has been unable, after diligent search and inquiry, to ascertain the names of the persons who are included as defendants therein without being named." * * *

Also section 12371:

* * * "In all suits and proceedings in chancery, if there be persons interested in the same, as heirs of some person or persons deceased, whose names are unknown, it shall be lawful to make such unknown heirs parties defendant to such suit or proceeding by the name and description of unknown heirs of such deceased person."

And section 12373:

* * * "When anyone against whom proceedings

under sections 20 to 27 inclusive of this chapter might otherwise be brought is known to be dead, and some of the persons who might claim under him, and their places of residence are known, such of them as are known shall be named as defendants and brought before the court in the manner provided by law, and all others who might claim under such deceased person may be included as unknown defendants."

We do not think it was contemplated by the legislature that service upon one in actual possession should be gotten by substituted service. If one claims title to premises that are in the possession of another, it is very easy to learn who he is and make personal service upon him. It would indeed be absurd to hold under this statute that where one claims the title to a farm or residence in a city or village, that he could get service upon the person in actual possession by substituted service. We lately took occasion to consider the question as to what diligence was necessary to be exercised before resort was had to substituted service in *Barnes* v. *Curry*, 232 Mich. 532.

If, as defendant offered to show, it had been in actual possession of the said premises for 50 years, and had had it fenced in as a part of its right of way, it was entitled to be served personally. Service of process could always be made upon this kind of a corporation. During business hours it is nearly always at home. When plaintiff desired to commence suit in ejectment against the company he appears to have had no difficulty in ascertaining that defendant was in possession of the land, and he appears to have had no difficulty in serving process upon it. Just why one should have had any greater difficulty in the chancery case is not readily understood by us. The affidavit for substituted service in the Dingeman suit does not appear in this record. It perhaps is not very material to this suit, but in the light of these facts we think it would be very interesting reading.

We must hold that defendant was not included among the unknown assigns. It was entitled to personal service. It did not have personal service, therefore it is in no way bound by it and may question it in a collateral proceeding. *Millar* v. *Babcock,* 29 Mich. 526; *King* v. *Harrington,* 14 Mich. 532; *Barnes* v. *Curry, supra.*

The judgment is reversed and a new trial granted. Defendant will recover its costs of both courts.

SHARPE, SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.